IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| RICHARD ANTHONY HEROD, TDCJ-CID No. 01795915, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 2:22-CV-00086-Z-BR |
| BOBBY LUMPKIN, *et al.*, | § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION TO GRANT
IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is the Motion for Summary Judgment filed by Defendants Timothy King and Julia King (the "Motion"). (ECF 36). After considering said Motion and the Response and Replies thereto, the Magistrate Judge recommends that the District Judge GRANT the Motion in part and DENY the Motion in part, as follows:

**I. FACTUAL BACKGROUND**

*Pro se* Plaintiff Richard Anthony Herod ("Herod") is a prisoner at the Bill Clements unit in Amarillo, Texas. On February 23, 2022, after completing his work assignment as a diet line grill cook, Herod was sitting on an orange 10-gallon Igloo cooler while eating a meal at a table with other inmates. (ECF 18 at 2). Defendants Julia King ("J. King") and her husband Timothy King ("T. King"), who are food service managers, walked by Herod's table to go on their lunch break. As they passed, J. King kicked the cooler upon which Herod was sitting. (ECF 18 at 3-4). Approximately a week earlier, she had ordered Herod to not sit on coolers, and had threatened to kick the cooler out from underneath Herod if she caught him sitting on a cooler again. (*Id*. at 4). After her first "soccer-style" kick of the cooler, she kicked again, this time using a "backwards

mule style" kick. The bottom of her work boot struck Herod in his left knee. (ECF 18 at 4). When Herod told J. King, "you just assaulted me," another inmate added "with a donkey kick." T. King then responded, "[a]nd I got the donkey dick." (ECF 18 at 3). The Kings then left the area to go on their lunch break. (*Id.*). Herod claims that T. King failed to render aid after the kick. (*Id.*). Herod further claims that J. King's kick caused him an injury that required pain medication for six months and him being placed on medical squad. (ECF 3 at 4).

On February 5, 2024, the Court granted the Motion to Dismiss filed by supervisory defendants William Williamson, Adam Gonzales and Bobby Lumpkin. (ECF 32). The Court also granted T. King's motion as to the claims against him, but allowed Herod to amend his claim of failure to render aid, which Herod did. (ECF 30). Defendants now seek summary judgment on qualified immunity grounds as to Herod's two remaining claims: failure to render aid against T. King, and excessive force against J. King.

## II. LEGAL ANALYSIS

### A.  Summary Judgment Standard.

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

2

The movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Anderson,* 477 U.S. at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must provide affirmative evidence to defeat summary judgment. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor...unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Comput. Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). The Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all evidence but must not make any credibility determinations or weigh the evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

**B.     Defendants' Qualified Immunity Defense Alters the Burden of Proof.**

Defendants move for summary judgment on their affirmative defense of qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023) (citing *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)

3

(en banc)). Once an officer pleads qualified immunity, the plaintiff has the burden to establish that the officer violated the plaintiff's clearly established federal rights. *Argueta*, 86 F.4th at 1088 (citing *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005)). "This is a demanding standard." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1517 (2016). Because qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law, … we do not deny its protection unless existing precedent places the constitutional question beyond debate." *Argueta*, 86 F.4th at 1088 (internal citation omitted).

A qualified immunity defense alters the usual summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id*. To determine if an official acting within the scope of his or her duties is entitled to qualified immunity, courts conduct a two-step analysis. First, they examine whether the plaintiff has shown a violation of a constitutional right under current law. *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (quoting *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019)). Second, if a violation has occurred, courts determine whether the right in question was "clearly established" at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct. *Id.* In short, an officer is entitled to qualified immunity "if there is no violation, or if the conduct did not violate law clearly established at the time." *Bailey v. Iles*, No. 22-30509, 2023 WL 8062239 at *2 (5th Cir. Nov. 21, 2023). Courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Each Defendant's conduct must be

analyzed separately to determine if he or she is entitled to qualified immunity. Still, at the summary judgment stage, the Court "must 'view the facts in the light most favorable to ... the nonmoving party.'" *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 727 (5th Cir. 2018). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III. LEGAL ANALYSIS

To defeat Defendants' Motion, Herod must show that each Defendant's qualified immunity defense is unavailable. *King v. Handorf*, 821 F.3d 650, 653–54 (5th Cir. 2016). "The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Id.* at 654 (quoting *Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008)). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" *Id.* (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)).

**A.  Claim Against T. King for Failure to Render Aid.**

Herod alleges that T. King violated his constitutional rights by failing to render aid after J. King kicked him. To establish deliberate indifference predicated on a delay in medical treatment, Herod must show that T. King "refused to treat [Herod], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017) (per curiam) (quoting *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (per curiam)). A prison official acts with deliberate indifference if he is aware of and ignores a serious risk to an inmate's health. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate

indifference is an extremely high standard." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). Further, a delay in medical treatment violates the Eighth Amendment only "if there has been deliberate indifference [that] results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Establishing deliberate indifference requires satisfaction of both an objective and a subjective component. *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013). An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). As to the subjective component, an official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety" and "disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 837; *Gobert*, 463 F.3d at 346. An official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino*, 239 F.3d at 756 (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 838). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quoting *Farmer,* 511 U.S. at 837); *see Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show that prison official was actually aware of risk of harm and consciously ignored it).

Therefore, the Court must determine whether a fact question exists as to whether T. King was deliberately indifferent in failing to provide medical care after Herod was kicked, and whether

such delay substantially harmed Herod. There is no evidence in the record from T. King as to his subjective knowledge regarding whether Herod had been kicked or whether he knew that Herod had been injured by the kick. Herod claims that he exclaimed "You just assaulted me" to J. King after she kicked him, and T. King was standing nearby. (ECF 18 at 3-4). Because there is no countervailing affidavit from T. King indicating that he did not know Herod had been kicked, the Court will assume for the purposes of this Motion that Herod's undisputed statement to Defendants is sufficient evidence that T. King had subjective knowledge that Herod had been kicked.

However, knowledge of the kick alone is insufficient to meet the deliberate indifference standard. The kick itself does not show that Herod was at "substantial risk of serious bodily harm." Nor does it show that T. King knew of an "excessive risk" to Herod's health and safety. There is also no evidence that T. King subjectively knew that Herod was at risk of serious harm if he did not provide medical treatment. The risk of harm must be "so apparent that even laymen would recognize that care is needed." *Gobert*, 463 F.3d at 345 n. 12. Herod's statement to J. King that "You just assaulted me" may establish that T. King knew there was a chance that Herod had been injured, but it does not establish that T. King knew Herod was "at substantial risk of harm … due to a serious medical need." *Cope v. Cogdill*, 3 F.4th at 198, 206-07 (5th Cir. 2021).

There is no evidence that Herod notified T. King that he had been injured, or even that he physically reacted in a way that showed he was injured, such as falling off the cooler. Herod does not indicate that he reacted or showed pain in any way, other than his statement that he had been assaulted. In fact, he indicates in his Response Brief that he was trying to hide his pain in order to prevent showing weakness in front of the other inmates who were present. (ECF 44 at 11). The strongest evidence of Herod's need for medical attention would have been his own statements during the encounter – but he provides no evidence that he expressed to T. King that he was

7

seriously injured, nor does he provide evidence that he told T. King that he needed medical attention.

There is also no evidence that Herod was substantially harmed by the delay in medical treatment. Herod saw medical personnel on March 10, 2022, which was 15 days after he was kicked. (ECF 36-1 at 45). At that time, he told medical officials that he had believed his knee pain would be temporary at the time the incident occurred, but the pain was continuing to worsen over time. (*Id.*). After he was examined, he was treated with ibuprofen only, which indicates that Herod did not have a "serious medical need" caused by the delay. (*Id.*). *See Morgan v. Hendrick Med. Ctr.*, No. 1:14-CV-00117-BL, 2015 WL 13229546, at *2 (N.D. Tex. Mar. 6, 2015) ("A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" (citation omitted). There is no evidence that the delay in care substantially harmed Herod. *See Ramirez v. Stacks*, 260 F. App'x 658, 660 (5th Cir. 2007) (per curiam) (concluding prisoner failed to raise an Eighth Amendment violation where delay in diagnosis and treatment did not cause substantial harm); *Barnhill v. Loftin*, No. W-20-CA-016-ADA, 2022 WL 378443, at *5 (W.D. Tex. Feb. 8, 2022) (dismissing deliberate indifference claim because, although prisoner was treated later than he would have liked, "[p]laintiff received both a CT and x-rays, neither of which found any substantial injury whatsoever"). Herod further reported to medical that ibuprofen made him feel better, which militates against a finding of "serious medical need." (ECF 36-1 at 31).

Herod claims that he spent 15 days in pain after the kick and before the medical treatment, and that those 15 days would have been unnecessary had T. King followed mandated TDCJ policy and inquired if Herod had been injured by the kick. Even if Herod is correct that T. King violated prison procedures by not checking on him, such violation does not meet the "extremely high

8

standard" of wanton disregard giving rise to a constitutional violation.[1] *Gobert*, 463 F.3d at 346. Further, the fact that his injury was effectively treated with ibuprofen only indicates that no "substantial" harm had occurred due to the delay in treatment. Therefore, the Motion should be granted as to T. King.

**B.      Claim Against J. King for Excessive Force.**

Herod alleges that J. King used excessive force when she kicked him in the knee. To succeed on an excessive force claim, a plaintiff bears the burden of showing (1) an injury; (2) that resulted directly and only from the use of force that was excessive to the need; and (3) the force used was objectively unreasonable. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (internal quotation omitted). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Baldwin v. Stalder*, 137 F.3d 836, 838 (5th Cir. 1998) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). The Eighth Amendment's prohibition against cruel and unusual punishment includes the unnecessary and wanton infliction of pain. *Whitley v. Albers*, 475 U.S. 312, 319 (1992).

J. King concedes that, at the summary judgment stage, Herod has established a material question of fact as to whether she used excessive force when she kicked him. (ECF 36 at 14).

---

[1] T. King's alleged failure to follow prison procedures, in itself, is not a violation of Herod's constitutional rights. An assertion that prison officials failed to follow prison rules or policies does not state a constitutional claim. *McFaul v. Valenzuela*, 684 F.3d 564, 579 (5th Cir. 2012), *citing Jackson v. Cain*, 864 F.2d 1235, 1251–52 (5th Cir. 1989); *see also Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam). TDCJ's policies, internal rules, and regulations, standing alone, do not create federally protected rights. *See Sandin v. Conner*, 515 U.S. 472, 487 (1995); *Jackson*, 864 F.2d at 1251-52 ("A state's failure to follow its own procedural regulations does not establish a violation of due process, because constitutional minima may nevertheless have been met" (internal quotation omitted).

9

However, she claims that she is entitled to qualified immunity and, therefore, summary judgment, because Herod cannot show sufficient legal precedent demonstrating that her actions were clearly prohibited. (*Id.*).

In considering whether J. King violated Herod's constitutional right to be free of excessive force, the Court considers the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Wilson v. Layne*, 526 U.S. 603, 614 (1999). A right is "clearly established" when its contours are sufficiently clear that a reasonable official would know that what he or she was doing violated that right. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The central concept is that of fair warning: [t]he law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Kinney v. Weaver*, 367 F.2d 337, 350 (5th Cir. 2004) (en banc). Further, the law should be "clear in a more particularized rather than abstract sense such that it is apparent that the official's actions are unlawful based upon pre-existing law." *Anderson*, 483 U.S. at 640.)). A case directly on point is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Acosta v. Williamson County,* 2024 WL 3833303 (5th Cir. Aug. 15, 2024).

Herod likens this case to attacks on defenseless prisoners, in which officers were found to have used excessive force against prisoners who were handcuffed or not otherwise creating a disturbance. *See, e.g., Brown v. Lippard*, 472 F.3d 384 (5th Cir. 2006). Conversely, J. King alleges that the law must show that it is a clearly established prohibition on use of force when "the in-question force was not intended to strike the prisoner, the prisoner has failed to follow an officer's directive, and the prisoner had advanced notice of the repercussions." (ECF 36 at 17). The Court

10

believes that King's view is too narrow of a reading as to the applicable law, as applied to the facts in the record at this stage of the proceedings.

J. King first alleges that, to survive summary judgment, Herod must show that it is a constitutional violation to accidentally strike a prisoner because, she claims, it was not her subjective intent to strike Herod. (*Id.* at 15). As correctly noted by J. King, any excessive force evaluation focuses on the prison official's subjective intent as to whether the force was used as punishment rather than to maintain order. *Byrd v. Harrell*, 48 F.4th 343, 347 (5th Cir. 2022). J. King points to Herod's assertion that J. King apparently meant to kick the cooler out from underneath Herod, combined with his admission that J. King had told him a week earlier that she would kick the cooler out from under him if she caught him sitting on it again. (ECF 18 at 2-3). However, Herod's assumption as to J. King's intent does not constitute viable summary judgment evidence, and is contradicted by Herod in his responsive briefs. Both parties claim that a video recording of the incident exists, but neither party submitted the video into the record. J. King provides a letter written by an ombudsman officer who apparently communicated with other officers who watched the video but found it to be insufficient to establish whether an assault occurred. (ECF 34-4 at 4). Again, however, this hearsay-within-hearsay-within-hearsay is not competent summary judgment evidence. There is no admissible evidence in the record as to J. King's subjective intent in delivering the kick that injured Herod.[2]

J. King next argues that she was attempting to regain compliance over Herod when she delivered the kicks because he was refusing to comply with her directive from at least one week

---

[2] Even assuming that the parties agree that J. King intended to kick the cooler rather than Herod with her first kick, there is no evidence, competent or otherwise, as to her intent in delivering the second kick, which is the kick that made contact with Herod's knee.

earlier to not sit on a cooler. (*Id.* at 15). While the Court agrees that officers are justified in using "some degree of force in a good-faith effort to maintain or restore discipline," *see Gonzalez v. Rowe,* No. 5:20-CV-052-BQ, 2020 WL 4811005 (N.D. Tex. July 27, 2020), the undisputed week-long interim between the order and the force used by J. King renders this argument unavailing at the summary judgment stage. The undisputed evidence shows that there was no interaction whatsoever between them before J. King began kicking. (ECF 18 at 4, 46 at 2-3). The interim between the time of the order and the time of the force creates a factual dispute as to whether the force was used due to Herod's failure to comply with her order from the week before.

J. King's remaining arguments also fail. She alleges that Herod sought medical attention for his knee only after she wrote a disciplinary charge against him for failing to perform his job. (ECF 36-2 at 6-9). In response, Herod claims that J. King wrote the disciplinary charge as a pretext to be able to claim retaliation in the event that Herod complained about the kick. (ECF 44 at 10). This is a material factual dispute, but irrelevant to the question of whether J. King's actions clearly constituted a constitutional violation. Lastly, J. King also characterizes her kick as "horseplay" rather than a constitutional violation. (ECF 36 at 7). Again, however, because there is no evidence of J. King's subjective intent in the record, the Court cannot conclude as a matter of law that her subjective intent was not to purposefully injure Herod, as he alleges. In sum, the Court disagrees with J. King's characterization of the type of "clearly established" law required to defeat J. King's right to qualified immunity as a matter of law.

As noted, Herod alleges that J. King kicked him while he was sitting on a cooler, eating his meal and posing no threat. According to Herod, he was not interacting with J. King in any way before she began kicking. (ECF 18 at 4; 46 at 2-3). Under the facts presently before the Court, this case is more akin to a guard striking a defenseless prisoner rather than a guard who needs to use

force to restore order. The Fifth Circuit has specifically found, in the context of a criminal suspect, that once a suspect is "subdued" and "no longer resisting, an officer's subsequent use of force is excessive." *See, e.g., Bagley v. Guillen*, No. 22-20644 (5th Cir. Jan. 10, 2024) (quoting *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 341-42 (5th Cir. 2020)); *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012) (finding it objectively unreasonable for officers to injure a man whose "behavior [does] not rise to the level of active resistance."); *see also Ware v. Kempt*, 2024 WL 3221417 (E.D. Tex Jan. 23, 2024) ("The law on this matter was clearly established at the time of the 2020 use-of-force incident and reasonable prison officials would know that the use of excessive force upon an inmate would violate clearly established constitutional principles…An officer's use of force against a prisoner who is not actively resisting may be considered excessive."). The Court is persuaded that any reasonable officer would have known that he or she could not walk up to an unresisting prisoner and kick him without warning, especially when there is no immediate need to subdue him to restore order. *See Darden*, 880 F.3d at 732 (collecting cases) ("[A] police officer uses excessive force when the officer strikes, punches, or violently slams a suspect who is not resisting arrest."); *see also Curran v. Aleshire*, 800 F.3d 656, 663 (5th Cir. 2015) (finding no legal error in a district court's conclusion that "slamming a student's head into the wall after her resistance had ceased is a violation of clearly established law").

      Assuming that Herod's version of the facts is true—as the Court must under Rule 56—the constitutional rule prohibiting the use of force solely for the purpose of causing harm applies "with obvious clarity to the specific conduct in question." *See Taylor v. Riojas*, 592 U.S. 7, 9 (2020) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Accordingly, Herod's sworn statements that the attack on him was unprovoked provide sufficient evidence to create a fact issue as to the

13

violation of a clearly established right.[3]

Therefore, for the reasons stated above, J. King's Motion should be denied.

## RECOMMENDATION

As set forth above, the U.S. Magistrate Judge recommends that Defendant T. King's Motion for Summary Judgment on qualified immunity grounds be GRANTED, and that Defendant J. King's Motion for Summary Judgment on qualified immunity grounds be DENIED.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED September 16, 2024.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by

---

[3]The Court notes that the severity of the injury that a prisoner must show is significantly lower in cases of unreasonably excessive force than it is in cases of failure to provide aid. The Fifth Circuit has found in excessive force cases that "as long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force. *Solis v. Serrett*, 31 F.4th 975, 982 (5th Cir. 2022) (internal quotes omitted).

electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).