IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

RICHARD ANTHONY HEROD,
TDCJ-CID No. 01795915,

    Plaintiff,

v.

BOBBY LUMPKIN, *et al.*,

    Defendants.

2:22-CV-86-Z-BR

## ORDER

Before the Court are the Magistrate Judge's Findings, Conclusions, and Recommendation to Grant in Part and Deny in Part Defendants' Motion for Summary Judgment ("FCR") (ECF No. 47). There, the FCR recommended that Defendants' Motion for Summary Judgment ("Motion") (ECF No. 36) should be granted as to Defendant Timothy King ("T. King") on qualified immunity grounds. ECF No. 47 at 9. But the FCR recommended that summary judgment be denied to Defendant Julia King ("J. King") on the same qualified immunity grounds. *Id.* at 14. Defendants filed an objection ("Objection") (ECF No. 50) only to the FCR's recommendation that summary judgment be denied to J. King. The Court addresses that Objection now.

### RELEVANT BACKGROUND

Plaintiff, a pro se prisoner at the Bill Clements Unit in Amarillo, Texas, alleges that J. King used excessive force when she kicked his knee. ECF No. 47 at 9. J. King is a food service manager at that unit. ECF No. 18 at 3–4. She had previously warned Plaintiff to not sit on coolers, and one week after her most recent warning, kicked the orange 10-gallon Igloo cooler on which he sat. *Id.* At first, she "soccer-style" kicked the cooler, followed by a "backwards mule style" kick. ECF No. 47 at 1–2. That latter kick struck Plaintiff in his left knee. *Id.* at 2.

J. King concedes that, at the summary judgment stage, Plaintiff established a material question of fact whether she used excessive force during her kick. ECF No. 36 at 14. But she claims that she is entitled to qualified immunity and therefore summary judgment because Plaintiff cannot demonstrate that her actions were clearly prohibited. *Id.* Specifically, she argues that to survive summary judgment, Plaintiff must show that it is a constitutional violation to strike a prisoner when it was not J. King's subjective intent to strike him. *Id.* at 15. J. King relies on Plaintiff's assertion that she apparently meant to kick the cooler out from underneath him, combined with his admission that she told him a week earlier that she would do so. ECF No. 18 at 2–3. The FCR ruled that the foregoing "assumption as to J. King's intent does not constitute viable summary judgment evidence and is contradicted by Herod in his responsive briefs." ECF No. 47 at 11. Defendants object. ECF No. 50 at 1.

**ANALYSIS**

Defendants argue that the FCR mistakenly struck three admissible pieces of evidence. First is the surveillance footage of J. King's kicks. However, neither party submitted this video into the record. ECF No. 47 at 11. Second is a letter "written by an ombudsman officer who apparently communicated with other officers who watched the video but found it to be insufficient to establish whether an assault occurred." *Id.*; ECF No. 34-4 at 4. Third are Lt. Hitchcock's and William Wilkerson's personal observations of this footage. The FCR characterized this chain of evidence as a "hearsay-within-hearsay-within-hearsay" problem. ECF No. 47 at 11. It concluded that "[t]here is no admissible evidence in the record as to J. King's subjective intent in delivering the kick that injured Herod." *Id.*

### I. The ombudsman letter and TDCJ grievance records are admissible.

The first layer of alleged hearsay includes the ombudsman letter and TDCJ grievance records investigating the alleged kick. ECF Nos. 36-1, 36-4. These pieces of summary judgment evidence include testimony from Hitchcock and Wilkerson, which, in turn, portray what occurred in the surveillance footage. Defendants argue that these records are admissible under the public records exceptions to hearsay. ECF No. 50 at 3–6. Defendants are correct.

Evidence is admissible when it "sets out . . . in a civil case . . . factual findings from a legally authorized investigation" and "the opponent does not show the source of information or other circumstances indicate a lack of trustworthiness." FED. R. EVID. 803(8). Matters within an officer's perception are admissible under the public records exception. *See Bedford Internet Off. Space, LLC v. Travelers Cas. Ins. Co.*, 41 F. Supp. 3d 535, 544 (N.D. Tex. 2014) ("Police reports are admissible, at least in part, under an exception to the hearsay rule as public records that set forth factual findings from a legally authorized investigation.").

Specifically, "[t]he portions of the reports that reflect the officers' first-hand observations based on their investigations and experience are admissible." *Id.* And prison investigative reports qualify under the foregoing public records exception. *See United States v. DeLeon*, 316 F. Supp. 3d 1303, 1306 (D.N.M. 2018) (finding that both a prison investigative report and incident report "are both admissible hearsay under rule 803(8)(A)(iii)").

The ombudsman letter sets forth the Clements Unit's investigation pursuant to a complaint from Christy Hunt, Plaintiff's wife. ECF No. 36-4 at 8–9. The ombudsman's official duties "include responding to inmates' or the public's complaints based on investigation into [an] incident." ECF No. 50 at 6 (citing authorities). Pursuant to the instant investigation, Wilkerson and Hitchcock investigated the incident, viewed the surveillance footage, and set forth their factual

findings — part and parcel of the public records hearsay exception. ECF Nos. 36-1 at 2, 39; 36-4 at 2, 15–16; FED. R. EVID. 803(8). Thus, the ombudsman letter and TDCJ grievance records themselves are admissible under the public records hearsay exception.

### II. Hitchcock's and Wilkerson's observations are admissible.

Next, the Court must consider whether the contents of Hitchcock's and Wilkerson's statements are admissible summary judgment evidence. They are.

The business records hearsay exception allows the introduction of an entity's regularly recorded activities if the record was made "at or near the time by . . . someone with knowledge," the making of the record was within the regular practice of the entity, and the "opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." FED. R. EVID. 803(6). The contents of investigative reports are admissible when they include "the firsthand observations of the reporting officers . . . ." *Esquivel v. Kendrick*, No. 22-50979, 2023 WL 5584168, at *4 (5th Cir. Aug. 29, 2023) (citing *United States v. Martin*, 434 F.2d 275, 279 (5th Cir. 1970)); *Bedford Internet*, 41 F. Supp. 3d at 543 (citing *United States v. Halperin*, 441 F.2d 612, 618 (5th Cir. 1971)).

Hitchcock's and Wilkerson's statements here are admissible under this exception because they were based on what these officers personally observed when viewing the surveillance footage. Further, "[t]he entries of such records were made as a regularly conducted activity and a regular practice of the TDCJ, and were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters" — here, Hitchcock and Wilkerson. ECF No. 36-1 at 2; ECF No. 36-4 at 2. Therefore, the contents of what Hitchcock and Wilkerson perceived are likewise admissible under the business records exception to hearsay.

4

### III. The surveillance footage is admissible.

Finally, the Court considers whether the surveillance footage itself was hearsay. Because it fails to qualify as an out-of-court "statement," it is not.

Hearsay is a statement that the declarant does not make while testifying at the current trial or hearing and a party offers in evidence to prove the truth of the matter asserted in the statement. FED. R. EVID. 801(c). A statement is "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." FED. R. EVID. 801(a).

The video footage is not a statement. First, video footage is not a *person's* assertion. Second, the non-verbal conduct depicted in that footage — like the offenders appearing to laugh in response to J. King's kicks or Herod's lack of physical reaction — is not a non-verbal statement because depicted reactions are not an intended assertion. *See United States v. Kiel*, 658 Fed. Appx. 701, 710 (5th Cir. 2016) (finding that it was not plain error to allow an officer to testify regarding a person's physical reaction when shown a surveillance video with a suspect because even if her physical reaction indicated that she recognized the suspect, her reaction was not intended to identify the suspect in the video) (citing 2 MCCORMICK ON EVIDENCE § 250 (7th ed. 2013); *United States v. Campbell*, 507 Fed. Appx. 150, 154 (3d Cir. 2012) ("Contrary to Campbell's assertion, the Rules of Evidence and our case law make clear that testimony concerning a person's nonverbal emotional reaction does not qualify as an assertion."). Thus, Hitchcock's and Wilkerson's observations of Herod's and other inmates' non-verbal demeanor does not amount to a statement for hearsay purposes.

### CONCLUSION

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). "The district judge may accept, reject,

or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

Therefore, the Court **ADOPTS** the FCR as to Defendant Timothy King and therefore **GRANTS** Defendants' Motion as to him. Therefore, he is **DISMISSED** as a defendant from this case on grounds of qualified immunity.

The Court further **ADOPTS** the FCR as to Defendant Julia King. That is because the foregoing admissible evidence at best just creates a factual dispute as to qualified immunity. *See, e.g.*, ECF No. 47 at 13–14 ("Accordingly, Herod's sworn statements that the attack on him was unprovoked provide sufficient evidence to create a fact issue as to the violation of a clearly established right.").

**SO ORDERED.**

November 4, 2024.

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE